IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GLENN GEORG and MARK NIXON,       )
                                  )
          Plaintiffs,             )
                                  )
     v.                           )   Civil Action No. 10-1387
                                  )
ALLEGHENY ENERGY SERVICE CORP.,   )
                                  )
          Defendant.              )

MEMORANDUM

Gary L. Lancaster,                             April 11, 2012
Chief Judge.

This is an employment discrimination action. Plaintiffs, Glenn Georg and Mark Nixon, allege that defendant, Allegheny Energy Service Corporation ("Allegheny Energy") retaliated against them for internally reporting an alleged act of religious discrimination, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act ("PHRA"). Plaintiffs seek compensatory and punitive damages, as well as fees and costs. Defendant has filed a motion for summary judgment [Doc. No. 46], arguing that neither plaintiff participated in activity protected by Title VII, and even if they did so, there is no causal link between such participation and their discharge from employment.

1

For the reasons set forth below, the motion for summary judgment will be granted.

I. BACKGROUND

Unless otherwise specifically indicated, the following material facts are undisputed.

Allegheny Energy hired Mr. Georg, a Lutheran, in 2007 as a Project Controls Manager. Allegheny Energy hired Mr. Nixon, a Methodist, in October 2008 as a Project Controls Manager, subject to a six-month probationary period. At the conclusion of a probationary period, probationary employees may become regular employees, be terminated from the company, or have their probationary period extended. Throughout plaintiffs' employment, both men reported to Enver Akyar, the Director of Project Controls and Estimating.

On April 7, 2009, the Project Controls and Estimating group held a meeting attended by Mr. Akyar, Mr. Georg, Mr. Nixon and approximately four others. During the meeting someone asked whether another group would be working that Friday. A second attendee responded that the employees would not be working on Friday, because it was Good Friday, a paid holiday for Allegheny Energy. In response, Mr. Akyar said in a loud voice "Jesus Christ, I didn't know." Mr. Georg responded to Mr. Akyar by saying that Jesus Christ was the reason why the employees had

2

off on Friday. Mr. Akyar then looked at Mr. Georg, with what another employee called a "death stare." At that point, Mr. Georg told Mr. Akyar that he was offended. Mr. Akyar asked, in a loud voice, "O, I did, did I?" He then asked, with a disgusted tone, if anyone else was offended. Another employee responded that he was offended. Mr. Nixon did not say that he was offended, but he was, in fact, offended. The meeting then continued, with the participants discussing business-related topics.

Todd Faulk, the Human Resources employee who conducted an investigation into the April 7 incident, testified in deposition that both individuals told him that at some time following the meeting, Mr. Georg asked Mr. Akyar: "What if someone said Oh Allah or Oh Mohammed, or Oh Buddha?" Mr. Faulk indicated that both Mr. Akyar and Mr. Georg reported that following this comment there was no further discussion of religion between them.

After the meeting, Mr. Akyar approached a work area shared by Mr. Nixon, Mr. Georg and a third employee. According to plaintiffs, Mr. Nixon told Mr. Georg that Mr. Akyar's comments and behavior were offensive and inappropriate, and encouraged Mr. Georg to report the incident to human resources. Plaintiffs also suggest, in their brief, that Mr. Akyar may have overheard Mr. Nixon's statements as he was walking towards the work

3

stations. Defendant disputes that Mr. Nixon encouraged Mr. Georg to report the incident and that Mr. Akyar heard any of the conversation.

When Mr. Akyar arrived at the work station, he smiled at the plaintiffs and nudged Mr. Nixon, asking whether they had really been offended. Mr. Akyar also stated that his comment was not a big deal because everybody says Jesus Christ in conversation. Mr. Nixon remained silent, but Mr. Georg reiterated that he was offended by the comment. Plaintiffs claim that Mr. Nixon turned his back on Mr. Akyar during this time, but defendant disputes that he did so.

On April 9, Mr. Georg was in Mr. Akyar's office to discuss a schedule prepared by Mr. Georg. After Mr. Akyar questioned Mr. Georg about mistakes in the schedule, Mr. Georg informed Mr. Akyar that the changes were based on information unavailable at the time the schedule was created. In response, Mr. Georg asserts that Mr. Akyar angrily said 'why don't we take this outside or downstairs,' although he could not recall the exact phrasing. Mr. Georg interpreted Mr. Akyar's statement as a threat. An internal investigation concluded that Mr. Akyar told Mr. Georg they could go downstairs, meaning to Human Resources, because of Mr. Georg's demeanor and inadequate response to Mr. Akyar's criticism.

On Tuesday, May 19, 2009, Mr. Georg reported to security that his life had been threatened by Mr. Akyar during a conversation between the two men in Mr. Akyar's office. According to Mr. Georg, he told Mr. Akyar that another colleague had told Mr. Georg that Mr. Akyar was difficult to work with. Then, Mr. Georg alleges that Mr. Akyar said: "If you continue to jeopardize my career I'll kill you." An internal investigation into the incident could not corroborate Mr. Georg's claim.

Mr. Nixon's employment was terminated on April 9, 2009. Mr. Georg was sent home on paid administrative leave on May 19, 2009, and was terminated thereafter.

At his deposition, Mr. Georg stated that he never shared with Mr. Akyar that he was a Lutheran. Mr. Nixon also stated in his deposition that he never informed Mr. Akyar that he was a Methodist, nor could he recall any general discussions about religion with Mr. Akyar.

The parties dispute facts related to the timing of defendant's decision to fire Mr. Nixon, Mr. Georg's performance reviews, and Mr. Georg's level of cooperation during a series of performance review meetings. The court finds that these disputes, while perhaps genuine, are not material to the court's opinion and need not be set forth in detail.

II. STANDARD OF REVIEW

The court shall grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party meets its burden of proving that no genuine issue of material fact exists, then the nonmoving party "must come forward with 'specific facts showing that there is a <u>genuine issue for trial.</u>'". <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (emphasis in original). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. <u>Wishkin v. Potter</u>, 476 F.3d 180, 184 (3d Cir. 2007). In ruling on a motion for summary judgment, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49 (1986); <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150-51 (2000) (citing cases).

The mere existence of some evidence in support of the nonmoving party will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a

6

jury reasonably to find for the nonmoving party on that issue under the governing substantive law. See Anderson v. Liberty Lobby, 477 U.S. at 248-49. Moreover, a party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." Podobnik v. United States Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If the nonmoving party fails to make a sufficient showing on an essential element of its case on which it has the burden of proof, the moving party is entitled to judgment as a matter of law. Celotex, 477 U.S. at 322-23.

In summary, the inquiry in ruling on a Rule 56 motion is whether the evidence of record presents a genuine dispute over material facts so as to require submission of the matter to a jury for resolution of that factual dispute, or whether the evidence is such that the movant must prevail as a matter of law.

III. DISCUSSION

The anti-retaliation provision of Title VII provides that:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).[1]

A plaintiff may survive a defendant's motion for summary judgment through the presentation of direct or indirect evidence. Pivirotto v. Innovative Sys. Inc., 191 F.3d 344, 352 n.4 (3d Cir. 1999). To prove retaliation by indirect evidence, the court must apply the burden-shifting framework established by McDonnell Douglas Corp. v. Green and its progeny. 411 U.S. 792 (1973); Fasold v. Justice, 409 F.3d 178, 188 (3d Cir. 2005). Under this framework, the plaintiff must first establish a prima facie case of retaliation by a preponderance of the evidence. Stewart v. Rutgers, 120 F.3d 426, 432 (3d Cir. 1997).

To establish a prima facie case of retaliation, the plaintiff must establish that (1) he engaged in conduct protected by Title VII; (2) his employer took an adverse action against him either after or contemporaneous with the protected activity; and (3) a causal link exists between his protected conduct and the employer's adverse action. Slagle v. County of Clarion, 435 F.3d 262, 265 (3d Cir. 2006). A plaintiff employee engages in conduct protected by Title VII if he opposes an unlawful employment practice ("the opposition clause"), or if he

---

[1] Claims under the PHRA are interpreted coextensively with claims under Title VII, and courts generally analyze them together. Atkinson v. LaFayette College, 460 F.3d 447, 454 n.6 (3d Cir. 2006).

8

makes a charge or otherwise participates in an investigation into an unlawful employment practice ("the participation clause"). Moore v. City of Philadelphia, 461 F.3d 331, 341 (3d Cir. 2006).

Once a prima facie case has been set forth, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for its action. Marra v. Philadelphia Housing Authority, 497 F.3d 286, 300 (3d Cir. 2007). If the defendant employer can articulate such a reason, the burden shifts back to the employee to prove that the reason was pretextual. Id. at 300-301.

Allegheny Energy does not deny that the terminations of plaintiffs from their respective jobs were adverse actions, and that, at least in the case of Glenn Georg, such termination occurred after the allegedly protected activity. Rather, defendant argues that neither plaintiff engaged in protected conduct, and that there was no link between the allegedly protected conduct and the terminations. In addition, defendant argues that Mr. Nixon was terminated before the decisionmakers were aware of the "Jesus Christ" incident. Finally, defendants argue that plaintiffs cannot show that their legitimate, non-discriminatory reasons for terminating plaintiffs were pretextual.

Plaintiffs contend that they acted consistent with an objectively reasonable, good faith belief that they were discriminated against on the basis of religion, and that they were terminated because of their opposition to that alleged discrimination. Because no reasonable jury could find that Mr. Georg or Mr. Nixon held an objectively reasonable, good faith belief that he was subject to discrimination due to his religious beliefs, the court will grant defendant's motion for summary judgment.

A. Opposition

Opposition does not require a formal letter of complaint to an employer or the Equal Employment Opportunity Commission. Barber v. CSX Distribution Services, 68 F.3d 694, 702 (3d Cir. 1995). Adequate forms of opposition include "making complaints to management, writing critical letters to customers, protesting against discrimination by industry or society in general, and expressing support for co-workers who have filed formal charges." Curay-Cramer v. Ursuline Academy of Wilmington, Delaware, Inc., 450 F.3d 130, 135 (3d Cir. 2006). The court must look to the message being conveyed by the employee, rather than the "means of conveyance." Id. An informal protest of an allegedly discriminatory employment practice must be specific enough to notify management of the particular type of

discrimination at issue. See Barber, 68 F.3d at 702 (finding complaint about unfair treatment not identifying age as the basis for discrimination not protected conduct for purposes of a retaliation claim under the Age Discrimination in Employment Act). "A general complaint of unfair treatment is insufficient to establish protected activity under Title VII." Curay-Cramer, 450 F.3d at 135.

Mr. Georg, by filing a complaint with Allegheny Energy's human resources department regarding Mr. Akyar's statements, clearly acted in opposition to Mr. Akyar's conduct. The court finds, however, that Mr. Nixon's responses to the April 7 meeting do not constitute "opposition." Because the parties dispute facts related to Mr. Nixon's actions following the meeting, the court will, on summary judgment, view the evidence in the light most favorable to the plaintiffs. That is, the court will assume that Mr. Nixon told Mr. Georg to report the incident to human resources and that he also found Mr. Akyar's comment to be offensive.[2] In addition, the court will assume that Mr. Nixon responded to Mr. Akyar's question at the work stations by turning his back and staying silent. While Mr.

---

[2] Plaintiffs offered no evidence to support their assertion that Mr. Akyar overheard the discussion between Mr. Nixon and Mr. Georg. At the summary judgment stage, conjecture is insufficient to establish a fact or create a genuine issue of material fact. Podobnik v. United States Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

11

Nixon's actions could be construed as "expressing support for a co-worker" who is planning to file a formal complaint, such support was not conveyed to Mr. Akyar or anyone else in management. Certainly, Mr. Nixon did not convey, through his silence or turning his back to Mr. Akyar, that he believed he or Mr. Georg had been discriminated against because of their religion in particular. Therefore, the court finds that Mr. Nixon's conduct was not opposition sufficient to constitute protected activity under Title VII.

### B. Unlawful Employment Practice

Each plaintiff alleges that he opposed what he reasonably believed to be an unlawful hostile work environment on the basis of his religion. The U.S. Court of Appeals for the Third Circuit has recognized Title VII claims for a hostile work environment based on religion. <u>Abramsom v. William Paterson College of New Jersey</u>, 260 F.3d 265, 276-77 (3d Cir. 2001). To make out a <u>prima facie</u> case for a hostile work environment claim, a plaintiff must demonstrate that: (1) the employee suffered intentional discrimination because of religion; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same religion in that position; and (5) the existence of respondeat

12

superior liability. Id. While a plaintiff need not prove the merits of an underlying discrimination complaint in order to succeed on a retaliation claim, he must show that he was "acting under a good faith, reasonable belief that a violation existed." Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1085 (3d Cir. 1996) (internal quotation omitted).

To prove that discrimination was "because of" religion, the employer must be aware of the employee's religion. See Geraci v. Moody-Tottrup, Intern., Inc., 82 F.3d 578, 581 (3d Cir. 1996)(holding that in a Title VII case involving a personal attribute not obvious to an employer, plaintiff must demonstrate that the employer knew about the particular attribute prior to the allegedly discriminatory behavior). In addition, "offhand comments, and isolated incidents (unless extremely serious)" do not amount to discrimination. Faragher v. City of Boca Raton, 524, U.S. 775, 788 (1998). Title VII should not become a "general civility code." Id. (quoting Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80 (1998)).

As an initial matter, there is no evidence in the record suggesting that Mr. Akyar was aware of the religious beliefs or affiliations of the plaintiffs. In order to create a hostile work environment because of plaintiffs' Christianity, Mr. Akyar would need to know about this protected, but "invisible," characteristic.

Although an employee need not know the "minutiae" of the law nor object to a practice that is actually covered by Title VII, Brown v. La. Lottery Corp., 240 F. Supp. 2d 590, 595 (M.D. La. 2002), the court finds the comments here to be objectively devoid of the discriminatory bias barred by Title VII. First, plaintiffs failed to establish that any of Mr. Akyar's actions or statements were motivated by discriminatory animus towards their religions or religious beliefs. Second, plaintiffs failed to establish that Mr. Akyar's actions were sufficiently pervasive to trigger a reasonable, good faith claim of hostile work environment.

No employee could reasonably believe that Mr. Akyar's initial comment ("Jesus Christ, I didn't know") was intentional discrimination against either Mr. Georg or Mr. Nixon because of their religious affiliations. Similarly, the subsequent "death stare" in response to Mr. Georg's explanation of the reason for the Good Friday holiday could not be reasonably believed to be motivated by Mr. Georg's religion. See Koschoff v. Henderson, 109 F. Supp. 2d 332, 346 (E.D. Pa. 2000)("Verbal and physical harassment, no matter how unpleasant and ill-willed, is simply not prohibited by Title VII if not motivated by the plaintiff's . . . membership in [a] protected group[]."). Furthermore, Mr. Akyar's comments and behavior at the plaintiffs' workstations following the meeting can hardly be described as hostile; trying

14

to minimize the incident and regain his co-workers' goodwill is not antagonism motivated by religious bias. Finally, the plaintiffs have offered no facts linking the April 9 or May 19 incidents to religion or religious bias. Taking plaintiffs' versions of the facts to be true, Mr. Akyar's comment ("why don't we take this outside or downstairs") on April 9 was triggered by Mr. Georg's response to a critique of his work. Similarly, on May 19, Mr. Akyar became angry after Mr. Georg criticized Mr. Akyar's management style. Although the relationship between Mr. Akyar and Mr. Georg was clearly strained, "conduct motivated by a bad working relationship is not . . . discrimination." Id.

As to the pervasiveness of Mr. Akyar's conduct, Mr. Georg complains of, at most, three incidents: (1) Mr. Akyar's "Jesus Christ" comment and "death stare" during the April 7, 2009 meeting; (2) Mr. Akyar's comment about "going downstairs or outside" on April 9, 2009; and (3) Mr. Akyar's threat against Mr. Georg on May 19, 2009. Even if some link to religion could be identified, these limited interactions over the course of two months are not "pervasive and regular". See, e.g., Gharzouzi v. Northwestern Human Services of Penn., 225 F. Supp. 2d 514, 536 (E.D. Pa. 2002) (finding six incidents over a three month period to be "far from regular").

Because the court finds that neither plaintiff engaged in protected activity, it will not consider the parties' arguments about the causal link between the allegedly protected conduct and the adverse employment actions.

IV. <u>CONCLUSION</u>

For the reasons set forth above, defendant's motion for summary judgment will be granted. An appropriate order will be filed contemporaneously with this memorandum.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GLENN GEORG and MARK NIXON, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 10-1387 |
| | ) |
| ALLEGHENY ENERGY SERVICE CORPORATION, | ) |
| | ) |
| Defendant. | ) |

ORDER

AND NOW, this 11th day of April, 2012, it is HEREBY ORDERED that Allegheny Energy Service Corporation's motion for summary judgment [doc. no. 46] is GRANTED.

BY THE COURT,

_____, C.J.

cc: All Counsel of Record